**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------- x
YASMIN CAMPBELL, on behalf of herself and  :     Case no.  1:25-cv-4782
all others similarly situated,             :
                                           :
            Plaintiffs,                    :
                                           :     CLASS ACTION COMPLAINT
         v.                                :              AND
                                           :     DEMAND FOR JURY TRIAL
ZZ DAY SPA, INC,                           :
                                           :
            Defendant.                     :
                                           :
                                           :
------------------------------------- x

## INTRODUCTION

1. Plaintiff Yasmin Campbell brings this action individually and on behalf of others similarly situated against ZZ Day Spa, Inc. Plaintiff is legally blind and relies on screen-reading software to access website content. The terms "blind" or "visually impaired" refer to those whose vision, even when corrected, does not exceed 20/200. This population includes individuals with little to no vision.

2. According to the U.S. Census Bureau's 2010 report, about 8.1 million Americans have a visual impairment, including 2 million who are blind. In New York, the American Foundation for the Blind estimated in 2015 that around 400,000 residents are visually impaired.

3. This civil rights suit arises from Defendant's failure to make its website usable and independently accessible to blind and visually impaired individuals. Defendant operates https://zzdayspa.com ("Website"), through which it offers goods and services to the general public. The Website is not accessible to blind individuals, depriving them of equal access to the services offered online and in connection with Defendant's physical spa locations. This constitutes a violation of the Americans with Disabilities Act ("ADA").

1

4. The Website displays information about services, promotions, and other offerings. Yet significant accessibility barriers prevent blind and visually impaired users from browsing or completing transactions. These limitations deny equal participation in digital commerce, which is now deeply integrated into everyday life. Assistive technologies exist to enable blind individuals to engage with online services, but Defendant has not adopted such measures.

5. Because blind individuals face unique mobility challenges, online access is even more critical. Defendant's failure to make its site accessible forces blind individuals to depend on sighted assistance, creating unnecessary hurdles to independently accessing spa services.

6. Despite the widespread availability of web accessibility tools—like alt text, accessible forms, keyboard compatibility, and reduced reliance on JavaScript—Defendant has opted for a design that prioritizes visual elements without regard for accessibility. This disparity enables sighted users to navigate and make purchases without issue while excluding blind users entirely.

7. This inaccessibility constitutes discrimination under both federal and New York State law. The ADA, as enacted by Congress, prohibits barriers that prevent equal opportunity, independent living, and full integration of individuals with disabilities. State law also requires public accommodations to make reasonable accommodations to serve individuals with disabilities.

8. Plaintiff visited the Website intending to schedule spa services, but was unable to do so because of these barriers. Unless the accessibility issues are resolved, she and other blind users will remain unable to browse, navigate, or purchase services independently on the Website.

9. Plaintiff now seeks injunctive relief to compel Defendant to adopt policies and practices that make its Website accessible and usable to blind individuals. Plaintiff also seeks compensatory damages for the unlawful discrimination experienced by the class.

## JURISDICTION AND VENUE

10. This Court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as the claims arise under Title III of the ADA. Supplemental jurisdiction exists under 28 U.S.C. § 1367 for the state and city human rights claims under the New York State Human Rights Law and New York City Human Rights Law.

11. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c), and 144(a). Defendant regularly conducts business in this District, and the conduct at issue occurred here. Plaintiff attempted to use the Website while located in this District on multiple occasions.

12. Defendant is registered to do business in New York and has specifically targeted New York residents via its website. These efforts reflect an intentional attempt to solicit business in the state. As a result, it is foreseeable that Defendant would be subject to suit here. Defendant's conduct has caused harm within this District, supporting venue placement.

13. Courts have consistently held that venue is proper where a plaintiff attempted and failed to access a discriminatory website. In Access Now, Inc. v. Otter Prods., LLC, the District of Massachusetts held that attempts to access a site in the forum state form part of the actionable conduct, supporting venue. Similarly, in Access Now, Inc. v. Sportswear, Inc., the court emphasized that actively soliciting business in a state creates a sufficient basis for jurisdiction and venue.

## PARTIES

14. Plaintiff resides in Bronx County, New York. She is legally blind and falls within the ADA's protected class, as defined under 42 U.S.C. § 12102 and applicable federal and state regulations. Plaintiff relies on screen-reading software to navigate the internet and has been denied full access to the goods and services offered on Defendant's Website as a result of persistent accessibility barriers.

15. Defendant, ZZ Day Spa, Inc., is a New York corporation with its principal business address at 120 E 56th Street, 2nd Floor, New York, NY 10022. Defendant offers spa services, including massages and facials, through its Website, which allows customers to book appointments and purchase gift cards online. Defendant's Website constitutes a place of public accommodation under Title III of the ADA, 42 U.S.C. § 12181(7). Because of its design and lack of accessibility features, Plaintiff has been deterred from making an online purchase through the Website.

## NATURE OF THE CASE

16. The internet has become a central platform for accessing information, shopping, education, banking, and more. This holds true for both sighted individuals and those who are blind or visually impaired.

17. Blind users access websites using screen-reading software in conjunction with keyboard navigation. These programs translate on-screen content into audio, enabling independent internet use. For those without sufficient residual vision to rely on magnification tools, screen readers are often the only means of accessing digital content. If a website is not compatible with screen readers, blind individuals are effectively excluded from its use.

18. In order for screen readers to function properly, web content must be translatable into text. When a site's content cannot be rendered into text, blind users are denied access to critical information and functionality that is otherwise available to sighted users.

19. There are several screen-reading tools available to blind users operating Windows-based systems. JAWS (Job Access With Speech) is among the most widely used programs for this purpose.

20. The World Wide Web Consortium (W3C), an international standards organization, has established the Web Content Accessibility Guidelines ("WCAG"), with version 2.2 currently recognized as the operative standard for accessible website design. These guidelines are widely adopted by large corporations and government entities to ensure compliance with accessibility requirements. Courts frequently look to WCAG 2.2 as a benchmark, and Section 508 of the Rehabilitation Act incorporates similar principles.

21. The WCAG outlines straightforward measures for accessibility, including the use of alt text for images, keyboard functionality, accessible forms, and proper headings. These guidelines are easily accessible and available to any business developing or maintaining a website. Without these components, a site cannot be used independently by blind individuals. Accessibility also depends on compatibility with different browsers and requires ongoing updates and maintenance to remain compliant.

**FACTUAL ALLEGATIONS**

22. Defendant operates and manages the Website within New York and across the United States.

23. The Website serves as an online platform where customers can browse spa offerings, book treatments, and purchase gift cards.

24. This action stems from Defendant's practice of denying blind individuals equal access to the goods and services available on its Website. Because Defendant has failed to remove access barriers, blind users cannot engage with the Website in the same manner as sighted users.

25. The Website contains structural and navigational flaws that prevent blind users from effectively using screen-reading software and keyboard-only navigation. These barriers interfere with full and independent use.

26. While using JAWS to access the Website, Plaintiff encountered multiple accessibility failures. Specific issues include:

27. Missing alternative text for images throughout the site, which left screen reader users with no meaningful description of visual content

28. Links and form controls lacking descriptive labels, making navigation unintuitive or impossible

29. Non-descriptive page titles that provide no context or orientation for blind users

30. Low contrast text that is difficult to distinguish, particularly for users with partial vision

31. Pages containing Flash elements, which are deprecated and unsupported by modern assistive technologies

32. Improper use of tables for layout rather than data, which screen readers interpret incorrectly

33. Improper heading structure and missing document language declarations

34. Redundant links with identical destinations, confusing for nonvisual users

35. Absence of skip navigation links, which are necessary for bypassing repetitive content

36. Empty headings and broken ARIA references that undermine assistive software function

37. These issues collectively render the site inaccessible for blind individuals and impossible to use without assistance.

38. Because of these accessibility flaws, blind customers like Plaintiff cannot independently purchase goods or services on the Website.

39. Plaintiff attempted to use the Website as a prospective spa client. She was actively searching for a reputable spa when she came across Defendant's site around April 30, 2025. One example of the experience involved an image labeled by her screen reader as "a group of people standing in front of what looks like a hospital." This misleading description, coupled with others such as "adult content no description available" for a massage photo, made clear that the Website was not designed with accessibility in mind.

40. Plaintiff returned to the Website on or about May 15 and May 19, 2025, to try again. She is interested in obtaining spa services and plans to revisit the site once the accessibility issues are resolved. She remains unable to complete a purchase.

41. Plaintiff has firsthand knowledge that the Website is not usable by blind individuals without assistance. These issues deprive her and others of full access to the information and services offered.

42. Defendant knowingly discriminated against blind users by:

43. Operating a Website it knew to be inaccessible;

44. Maintaining a user interface that was clearly non-compliant with accessibility standards; and

45. Failing to take corrective steps despite the foreseeable harm to blind users.

46. Defendant's policies and methods of operation have the effect of perpetuating discrimination against individuals with visual impairments.

47. As a result of this discrimination, Plaintiff and the class suffered concrete harm, including denial of access and loss of equal participation in the services Defendant provides online.

## CLASS ACTION ALLEGATIONS

48. Plaintiff brings this action on behalf of herself and all similarly situated individuals nationwide under Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. The proposed class includes: all legally blind individuals in the United States who attempted to access the Website and were denied full access to its goods and services during the relevant statutory period.

49. Plaintiff also seeks certification of a New York subclass under Rule 23(a), 23(b)(2), and alternatively, Rule 23(b)(3), defined as: all legally blind individuals in New York State who attempted to access the Website and were denied full access to the Website's offerings during the relevant statutory period.

50. There are hundreds of thousands of visually impaired individuals in New York alone, and millions throughout the United States. The proposed class is so numerous that joinder of all members would be impractical. A class action provides an efficient and fair means of resolving the legal claims arising from Defendant's uniform policies.

51. This case challenges Defendant's consistent practice of operating an inaccessible website. Because of Defendant's failure to remove digital access barriers, blind individuals have been and continue to be denied equal access to the Website.

52. Common legal and factual questions include:

53. Whether the Website qualifies as a public accommodation under the ADA;

54. Whether the Website constitutes a place or provider of public accommodation under New York law;

55. Whether Defendant has denied blind users full and equal access to its goods and services in violation of the ADA;

56. Whether Defendant's conduct violates state and city disability rights laws.

57. Plaintiff's claims are typical of those held by the class. Like other class members, Plaintiff is legally blind and claims Defendant's failure to implement basic accessibility measures violates federal, state, and city disability laws.

58. Plaintiff will adequately represent the class. She is represented by experienced counsel with knowledge of class action litigation and disability rights claims. Plaintiff's interests are aligned with those of the class, and there is no conflict.

59. Class certification is appropriate under Rule 23(b)(2) because Defendant has acted on grounds generally applicable to the class, making injunctive and declaratory relief appropriate for all members. Alternatively, Rule 23(b)(3) is satisfied because common legal and factual questions predominate, and a class action is superior to hundreds or thousands of individual lawsuits.

60. Maintaining this case as a class action promotes judicial economy by avoiding duplicative litigation.

61. Unless otherwise specified, references to Plaintiff are intended to include both the named Plaintiff and each member of the putative class.

## FIRST CAUSE OF ACTION

## (Violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 et seq.)

62. Plaintiff, on behalf of herself and the class, reasserts and incorporates all preceding allegations.

63. Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182(a), prohibits discrimination on the basis of disability in the full and equal enjoyment of goods and services offered by places of public accommodation. It also prohibits use of criteria or administrative methods that have a discriminatory effect.

64. The Website qualifies as a public accommodation under 42 U.S.C. § 12181(7). Defendant owns and operates the Website and is subject to Title III of the ADA.

65. Under 42 U.S.C. § 12182(b)(1)(A)(i) and (ii), it is unlawful to deny individuals with disabilities equal participation in the goods, services, and privileges available to others.

66. Title III further defines unlawful discrimination to include:

67. The failure to reasonably modify policies and procedures to provide access unless doing so would fundamentally alter the nature of the goods or services (42 U.S.C. § 12182(b)(2)(A)(ii));

68. The failure to take necessary steps to ensure equal access through auxiliary aids and services unless it would impose an undue burden or alter the nature of the service (42 U.S.C. § 12182(b)(2)(A)(iii)).

69. There are widely available guidelines for website accessibility that do not impose undue hardship. Many businesses follow them, including use of alt-text, keyboard functionality, and accessible design structures. These features are straightforward to implement and would not change the core offerings of Defendant's business.

10

70. Defendant's ongoing failure to adopt these measures has resulted in discrimination. Blind users are excluded from full and equal use of the Website and are denied the services that sighted users access with ease.

71. These violations are continuing, and Defendant has not taken reasonable steps to address them.

72. As a result, Plaintiff and the class have suffered and will continue to suffer harm. Plaintiff seeks injunctive relief to compel compliance with the ADA and to prevent future discrimination. Plaintiff is also entitled to reasonable attorneys' fees and costs under 42 U.S.C. § 12188.

## SECOND CAUSE OF ACTION

(Violation of New York State Human Rights Law, N.Y. Exec. Law Article 15)

73. Plaintiff, individually and on behalf of the class, reasserts and incorporates all prior allegations.

74. Under N.Y. Exec. Law § 296(2)(a), it is unlawful for any owner or operator of a public accommodation to deny, directly or indirectly, any of its accommodations, advantages, facilities, or privileges on the basis of disability.

75. The Website is a sales platform and public accommodation within the meaning of N.Y. Exec. Law § 292(9). Defendant is subject to this law because it owns and operates the Website and qualifies as a covered person under § 292(1).

76. By failing to correct the accessibility barriers on the Website, Defendant has denied blind individuals equal access to its goods and services, in violation of § 296(2)(a).

77. This includes failing to make reasonable modifications to policies, practices, or procedures where such modifications are necessary to afford access to individuals with disabilities, unless doing so would fundamentally alter the nature of the service.

78. It also includes failing to take necessary steps to ensure that individuals with disabilities are not excluded due to the absence of auxiliary aids and services, unless such steps would result in an undue burden or alter the essential nature of the offering. See N.Y. Exec. Law § 296(2)(c)(ii).

79. These obligations are supported by well-established, publicly available guidelines for digital accessibility. Defendant has ignored these standards, choosing instead to maintain a Website that excludes blind users from participating independently.

80. Defendant's conduct constitutes willful and intentional discrimination. Specifically, Defendant:

81. Operates a Website that is knowingly inaccessible to blind individuals;

82. Maintains an interface that is plainly unusable with assistive technology;

83. Has taken no meaningful steps to fix or address the accessibility barriers despite knowing the harm it causes.

84. Defendant's failure to act is ongoing and has resulted in repeated denial of rights to Plaintiff and other members of the class.

85. Unless the Court intervenes, Plaintiff and the class will continue to face these unlawful barriers. Plaintiff seeks injunctive relief under New York law, compensatory damages, and civil penalties under N.Y. Exec. Law § 297(4)(c).

86. Plaintiff also seeks attorneys' fees and costs pursuant to the statute.

## THIRD CAUSE OF ACTION

(Violation of New York Civil Rights Law, Article 4, §§ 40 et seq.)

87. Plaintiff, on behalf of herself and the class, reasserts and incorporates all prior allegations.

88. Notice of this claim has been served on the New York State Attorney General in compliance with N.Y. Civil Rights Law § 41.

89. Under § 40 of the New York Civil Rights Law, all persons are entitled to the full and equal use of any place of public accommodation, including its services, facilities, and privileges. Owners, operators, and their agents are prohibited from directly or indirectly denying those rights based on disability.

90. Section 40-c(2) further provides that no person shall, on the basis of disability, be subjected to discrimination in their civil rights by any private entity or institution within the state.

91. The Website qualifies as a public accommodation under this statute. Defendant, as its operator, is therefore bound by the nondiscrimination obligations of New York Civil Rights Law §§ 40 and 40-c.

92. By failing to make its Website accessible, Defendant has denied blind users full and equal use of its goods and services. These violations are not incidental or technical. They amount to a systemic refusal to provide blind individuals with access to the digital platform in the same way as sighted customers.

93. These failures violate established accessibility standards that are well within Defendant's ability to implement without undue burden.

94. As a result of this discrimination, Plaintiff and the class are entitled to damages under § 40-d, which provides for civil penalties of no less than $100 and no more than $500 per violation. Defendant's repeated and ongoing conduct subjects it to liability for each instance of discrimination experienced by blind users attempting to access the Website.

95. Defendant has taken no prompt or effective action to resolve these violations. Unless compelled to do so, it will continue to engage in discriminatory conduct.

## FOURTH CAUSE OF ACTION

(Violation of New York City Human Rights Law, N.Y.C. Administrative Code § 8-101 et seq.)

96. Plaintiff seeks compensatory damages, statutory penalties, and attorneys' fees under the provisions of New York Civil Rights Law §§ 40 and 41.

97. Plaintiff, on behalf of herself and the class, reasserts and incorporates all prior allegations.

98. Under N.Y.C. Administrative Code § 8-107(4)(a), it is an unlawful discriminatory practice for any person who owns or operates a place of public accommodation to, directly or indirectly, deny access to any of its services, facilities, or privileges on the basis of disability.

99. The Website qualifies as a public accommodation under § 8-102(9). Defendant, as the operator of the Website, is a covered person under § 8-102(1).

100. By maintaining an inaccessible Website, Defendant has denied blind individuals the full use and enjoyment of its digital services. This denial constitutes discrimination within the meaning of the City Law.

101. The City Human Rights Law further requires that businesses make reasonable accommodations for individuals with known or reasonably knowable disabilities. See N.Y.C. Admin. Code § 8-107(15)(a). Defendant has not done so.

102. Instead, it has:

103. Operated and maintained a Website it knew was unusable by blind individuals;

104. Designed the interface in a way that is plainly incompatible with assistive technology;

105. Failed to take corrective action despite clear legal obligations and the foreseeable harm to disabled users.

106. These actions constitute ongoing and willful violations of the City Human Rights Law.

107. Unless the Court issues injunctive relief, Defendant will continue to discriminate against Plaintiff and other blind users. Plaintiff seeks such relief to remedy the exclusion and prevent further harm.

108. Plaintiff is entitled to compensatory damages, civil penalties, and attorneys' fees under N.Y.C. Administrative Code §§ 8-120(8) and 8-126(a).

## FIFTH CAUSE OF ACTION

(Declaratory Relief)

109. Plaintiff, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

110. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that Website contains access barriers denying blind

customers the full and equal access to the goods, services and facilities of Website, which Defendant owns, operates and/or controls, fails to comply with applicable laws including, but not limited to, Title III of the American with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y. Exec. Law § 296, et seq., and N.Y.C. Administrative Code § 8-107, et seq. prohibiting discrimination against the blind.

111. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully demands judgment in favor of Plaintiff and the class and against the Defendants as follows:

a) A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y. Exec. Law § 296, et seq., and N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b) A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its website, Website, into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that Website is readily accessible to and usable by blind individuals;

c) A declaration that Defendant owns, maintains and/or operates its website, Website, in a manner which discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§

    12182, et seq., N.Y. Exec. Law § 296, et seq., and N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d) An order certifying this case as a class action under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and her attorneys as Class Counsel;

e) An order directing Defendants to continually update and maintain its website to ensure that it remains fully accessible to and usable by the visually-impaired;

f) Compensatory damages in an amount to be determined by proof, including all applicable statutory damages and fines, to Plaintiff and the proposed class for violations of their civil rights under New York State Human Rights Law and City Law;

g) Plaintiff's reasonable attorneys' fees, expenses, and costs of suit as provided by state and federal law;

h) For pre- and post-judgment interest to the extent permitted by law; and

i) For such other and further relief which this court deems just and proper.

Dated: Manhasset, NY
June 5, 2025

                                      GABRIEL A. LEVY, P.C.
                                      *Attorney for Plaintiff*
                                      **/s/ *Gabriel A. Levy, Esq.***
                                      By: GABRIEL A. LEVY, ESQ (5488655)
                                          1129 Northern Blvd, Suite 404
                                          Manhasset, NY 11030
                                          Tel: +1 347-941-4715
                                          Email: Glevyfirm@gmail.com